IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| FOUR BATONS WIRELESS, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CASE NO. 2:24-CV-00284-JRG |
| | § | |
| SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC., | § § § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion to Disqualify Plaintiff Four Batons's Technical Expert Dr. Matthew Shoemake (the "Motion") filed by Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (together, "Samsung"). (Dkt. No. 45.)  In the Motion, Samsung moves to disqualify Plaintiff Four Batons Wireless, LLC's ("Plaintiff") expert, Dr. Matthew Shoemake, alleging that the expert is privy to Samsung's confidential information by virtue of his previous engagements with Samsung. (*Id*. at 1.)  Having considered the Motion and its related briefing, and for the reasons set forth herein, the Court finds that it should be **DENIED**.

**I.      BACKGROUND**

On April 26, 2024, Plaintiff filed suit, alleging that Samsung infringed four patents:  U.S. Patent No. 8,798,006 (the "'006 Patent"), U.S. Patent No. 8,239,671 (the "'671 Patent"), U.S. Patent No. 7,502,348 (the "'348 Patent"), and U.S. Patent No. 8,073,436 (the "'436 Patent") (collectively, the "Asserted Patents").  (Dkt. No. 1 ¶ 22.)

Each Asserted Patent generally relates to network interfacing in wireless devices.  (*See* Dkt. No. 49 at 2.)  For example, the '006 Patent discloses systems and methods for "substantially real-time comparison of quality of interfaces by mobile devices over heterogenous networks."  (Dkt.

No. 1-1 at *Abstract*.)  The '671 Patent generally relates to methods and systems "for channel binding parameters that are verified for consistency between a peer and a server," i.e., authentication of a mobile device to a network.  (Dkt. No. 1-2, Col. 1, ln. 7–11; *see also* Dkt. No. 49 at 2.)  In another example, the '348 Patent teaches a method for performing a "silent proactive handoff" (e.g., moving from one network to another) of a mobile device to a target network.  (Dkt. No. 1 ¶ 107–108.)  Finally, the '436 Patent discloses methods of controlling mobile devices having multiple heterogenous interfaces (*e.g.*, LTE, 2.4 GHz Wi-Fi, 5 GHz Wi-Fi) during silent periods of an application.  (*See* Dkt. No. 1 ¶ 134; Dkt. No. 49 at 2.)

On September 18, 2024, Plaintiff disclosed Dr. Matthew Shoemake to Samsung.  (Dkt. No. 45 at 2.)  Importantly, however, Samsung had previously retained Dr. Matthew Shoemake on two (2) separate occasions.

Samsung first retained Dr. Shoemake between April of 2020 to August of 2020 to evaluate whether a third party infringed three (3) of Samsung's patents (the "Investigation").  (Dkt. No. 45 at 3–4; Dkt. No. 49 at 3.)  Two (2) of the patents at issue in the Investigation relate to "antenna subsystems" and processing biometric information.  (Dkt. No. 49 at 3; Dkt. No. 49-2 at 12.)  The third Samsung patent—U.S. Patent No. 9,913,313 (the "'313 Patent")—teaches improvements in Wi-Fi peer-to-peer ("Wi-Fi P2P") technology.  (Dkt. No. 45 at 4; Dkt. No. 49 at 3.)  Samsung alleges that, during the Investigation, Dr. Shoemake reviewed a claim chart prepared by Samsung of the '313 Patent mapped against the Samsung Galaxy S10+ and Note 10+ smartphones (the "Claim Chart").  (Dkt. No. 45 at 3–4.)  However, Dr. Shoemake disputes that he ever evaluated any of Samsung's patents against any of Samsung's products.  (Dkt. No. 49-1 ¶ 36.)

On April 15, 2021, Samsung retained Dr. Shoemake for a second time to assist in an International Trade Commission investigation, *In the Matter of Certain LTE-Compliant Cellular*

*Communication Devices,* ITC Inv. No. 337-TA-1253 (the "ITC matter"). (Dkt. No. 45 at 4; Dkt. No. 49-1 ¶ 43.) The patents asserted in the ITC Matter were directed to a "more efficient—and faster—handover process" for wireless devices on LTE networks. (Dkt. No. 45. at 5; *see also* Dkt. No. 49-1 ¶ 44.) As a part of his consultant agreement with Samsung, and over the course of 168 hours, Dr. Shoemake prepared an invalidity report and reviewed "confidential technical information," such as source code related to Samsung's Galaxy smartphones and tablets. (Dkt. No. 45 at 5; Dkt. No. 49-1 ¶ 46.) Samsung also submitted the Declaration of Brice C. Lynch (the "Lynch Declaration") which provides that "Dr. Shoemake participated in many privileged discussions with Samsung's attorneys" about the litigation strategy for the ITC Matter and that he "reviewed confidential transcripts of the depositions of Samsung's engineers" regarding the accused products at issue in the ITC Matter. (Dkt. No. 45-7 ¶ 7.)

## II.  LEGAL STANDARD

Federal courts have the inherent power to disqualify experts, although such power is rarely used. *Koch Ref. Co. v. Jennifer L. Boudreau M/V*, 85 F.3d 1178, 1181 (5th Cir. 1996). The Fifth Circuit has adopted a two-step analysis for determining whether an expert or consultant should be disqualified:

(1) whether the opposing party had a confidential relationship with the expert; and

(2) whether the opposing party disclosed confidential or privileged information relevant to the instant case to the expert.

*Id.* (internal citations omitted). The party seeking disqualification bears the burden of proving these elements, and only if both prongs are met should the expert be disqualified. *See id.* In making this determination, courts may also consider public policy considerations like whether another expert is available and whether the opposing party has time to hire and prepare another expert before trial. *Id.* at 1183.

3

### III. ANALYSIS

*(a) Whether a confidential relationship existed?*

The Parties do not dispute that Dr. Shoemake and Samsung had a confidential relationship arising from the Investigation and the ITC Matter. (Dkt. No. 45 at 3–5; Dkt. No. 49 at 5, n. 1.) Accordingly, the first prong of the *Koch* test is satisfied.

*(b) Whether the expert received confidential information?*

Samsung alleges that it disclosed four categories of confidential information to Dr. Shoemake: (1) confidential technical information, (2) deposition transcripts from Samsung engineers, (3) a claim chart for the '313 Patent, and (4) litigation strategy. The Court addresses each category in turn.

#### (1) Confidential Technical Information

In its Motion, Samsung argues that it disclosed "confidential technical information, e.g., source code and other technical documents and information related to Samsung's Galaxy smartphones and tablets," to Dr. Shoemake. (Dkt. No. 45 at 7.) According to Samsung, the confidential technical information "is the same type of information that this Court has held to constitute confidential and privileged information in other cases." (*Id.* at 8.)

In response, Plaintiff argues that the confidential technical information cannot constitute "confidential information" for disqualification purposes. (Dkt. No. 49 at 7.) Instead, Plaintiff asserts that the confidential technical information is "purely technical information" which Samsung may not rely upon to disqualify Dr. Shoemake. (*Id.* at 12–13 (citation omitted).)

The Court agrees with Plaintiff. For these purposes, confidential information includes "discussion[s] of the [retaining party's] strategies in the litigation, the kinds of experts [the party] expected to retain, [the party's] views of the strengths and weaknesses of each side, the role of

4

each of the [party's] witnesses to be hired, and anticipated defenses." *Koch Ref. Co.*, 85 F.3d at 1182 (citing *Mayer v. Dell*, 139 F.R.D. 1, 4 (D.D.C. 1991); *see also Wapp Tech Ltd. P'ship v. Seattle SpinCo, Inc.*, No. 4:18-cv-00469, 2020 WL 6504335, at *2 (E.D. Tex. Nov. 4, 2020). The type of confidential information contemplated by *Koch* is strategic and subjective in nature, not technical. Indeed, "purely technical information" is not confidential. *Koch Ref. Co.* 85 F.3d at 1182 (citation omitted). The confidential technical information raised here is, by Samsung's own characterization, purely technical information that is improper to disqualify Dr. Shoemake. Samsung's citation to caselaw having different facts is unpersuasive.

Accordingly, the confidential technical information cited by Samsung cannot disqualify Dr. Shoemake.

### (2) *Deposition transcripts*

In its Motion, Samsung argues that, in connection with the ITC Matter, Dr. Shoemake reviewed confidential information in the form of deposition transcripts of Samsung engineers regarding Samsung's Galaxy smartphones and tablets and their functionality. (Dkt. No. 45 at 7.)

In response, Plaintiff argues that the deposition transcripts cannot disqualify Dr. Shoemake. (Dkt. No. 49 at 13.) Specifically, Plaintiff asserts that purely technical material that could be subject to discovery, such as the deposition transcripts, does not constitute confidential information. (*Id.* (citing *Mitchell v. Murphy Oil USA, Inc.*, No. CIV.A. 03-1645, 2003 WL 22077804, at *1 (E.D. La. Sep. 5, 2003)).)

On this record, the Court cannot conclude that the deposition transcripts identified by Samsung constitute confidential information under *Koch*. By Samsung's own characterization, the deposition transcripts relate to technical information (product functionality), not litigation strategy.

*Koch Ref. Co.*, 85 F.3d at 1182 (citing *Mayer*, 139 F.R.D. at 4); *see also Wapp Tech*, 2020 WL 6504335, at *2 (E.D. Tex. Nov. 4, 2020).

Accordingly, these deposition transcripts do not disqualify Dr. Shoemake.

### (3) *Claim Chart*

In its Motion, Samsung argues that, during the Investigation, it disclosed confidential information to Dr. Shoemake in the form of the Claim Chart. (Dkt. No. 45 at 4.) Samsung further asserts that Claim Chart is relevant because the technologies at issue in the Investigation and this case overlap. (*Id*. at 9.) As support, Samsung notes that the Claim Chart evaluated Samsung's Galaxy S10+ and Note+, both of which are accused products in this case. (*Id*.) Samsung also insists that this case and the Investigation involve similar patents, asserting that "both the '313 Patent and '436 Patent relate to devices that use two network interfaces at the same time." (*Id*.)

Plaintiff argues in response that the Claim Chart is an improper basis for disqualification. It gives two (2) reasons. First, Plaintiff disputes whether Dr. Shoemake reviewed the chart, noting that his billing records do not mention mapping any Samsung patents against any of Samsung's products. (Dkt. No. 49 at 8.) Second, Plaintiff argues that the Claim Chart is irrelevant to the instant case. (*Id*. at 6–7.) Specifically, Plaintiff asserts that the '313 Patent's objective is to improve Wi-Fi P2P connections by maintaining connection to a singular, legacy Wi-Fi interface, whereas the '436 Patent relates to using multiple heterogenous radio interfaces concurrently. (*Id*. at 6–7.)

The Court does not need to address whether or not Dr. Shoemake actually reviewed the Claim Chart because the document is not relevant to the instant case for two (2) reasons. First, this is not a case where an expert consulted opposing parties "nearly overlapping" in time. *Wapp Tech*, 2020 WL 6504335, at *3 (E.D. Tex. Nov. 4, 2020). Instead, the Claim Chart stems from

Samsung's investigation of an unrelated third party which occurred a half a decade ago—an "eon in software development." *Id*. at *2. Second, it is Samsung, not Dr. Shoemake, who switched sides. Specifically, Samsung sought to assert its patents during the Investigation but is now defending itself from liability for patent infringement. Any potential confidential information Dr. Shoemake learned from Samsung during the Investigation and through the Claim Chart relates to Samsung's role as a patent asserter—not a patent infringer—and is irrelevant here. *See Wireless Alliance, LLC v. AT&T Mobility LLC*, No. 2:23-cv-00095-RWS-RSP, 2024 WL 4609702, at *1 (E.D. Tex. Oct. 29, 2024).

Accordingly, the "general overlap" in subject matter between the '314 and '436 Patents, such as the use of a network interface by a wireless device, happened too long ago and is too attenuated to disqualify Dr. Shoemake. *Id*. (citations omitted).

### (4) *Litigation Strategy*

In its Motion, Samsung argues that the Court should disqualify Dr. Shoemake because he "participated in privileged discussions with Samsung's attorneys regarding confidential materials, litigation strategy (e.g., related to forming non-infringement and invalidity positions), the preparation of his non-infringement and invalidity reports, and the preparation for his depositions about those reports." (Dkt. No. 45 at 5.) As evidence of such discussions, Samsung points to the Lynch Declaration. (Dkt. No. 45 at 5 (citing Dkt. No. 45-7 ¶ 7).) Samsung also notes that Dr. Shoemake stated that he "worked collaboratively with Samsung's attorneys at every step in the process" of forming his report for the ITC Matter. (Dkt. No. 54 at 2 (citing Dkt. No. 45-10 ¶ 7).)

Plaintiff challenges Samsung's arguments on two (2) grounds. First, Plaintiff disputes whether Dr. Shoemake discussed litigation strategy with Samsung's attorneys. (Dkt. No. 49 at 7.) Plaintiff notes that Dr. Shoemake's billing records do not reflect that he had such discussions with

7

Samsung's attorneys during the Investigation. (*Id*. at 8.) Notably, Dr. Shoemake affirmatively declared that he did not discuss litigation strategy with Samsung's attorneys during the ITC Matter. (Dkt. No. 56-1 ¶ 13.) Second, Plaintiff argues that Samsung did not meet its burden of showing that the discussions constitute confidential information. (Dkt. No. 49 at 2, 8.) Specifically, Plaintiff asserts that Samsung must have pointed to "'specific and unambiguous disclosures that if revealed would prejudice it'" to show that Dr. Shoemake received confidential information from Samsung. (*Id*. (citing *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1094 (N.D. Cal. 2004)).) Samsung, however, did not do so.

As discussed above, discussing litigation strategy constitutes confidential information. *Koch Ref. Co.*, 85 F.3d at 1182 (citing *Mayer*, 139 F.R.D. at 4). However, courts generally require the movant to identify specific relevant confidential information to disqualify an expert witness. *See Allergan, Inc. v. Sandoz, Inc. et al.*, No. 6:11-cv-00441-MHS, Dkt. No. 163 at 6 (E.D. Tex. Mar. 06, 2013) (citing *Hewlett-Packard*, 330 F. Supp. 2d at 1097); *Hess Corp. v. Schlumberger Tech. Corp.*, No. H-16-3415, 2018 WL 6618068, at *3 (S.D. Tex. Dec. 18, 2018) ("Disqualification turns on whether **specific** confidential information known to Read is relevant to this litigation") (emphasis added); *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1096 (N.D. Cal. Aug. 10, 2004) ("Because the burden is on the party seeking to disqualify the expert, that party should point to specific and unambiguous disclosures that if revealed would prejudice the party") (citing *Mays v. Reassure Am. Life Ins. Co.*, 293 F. Supp. 2d 954, 957 (E.D. Ark. Nov. 7, 2003) (requiring more than "only vague assertions")). Indeed, in *Mayer v. Dell*—the case in which the U.S. Court of Appeals for the Fifth Circuit relied upon to disqualify an expert in *Koch*—the United States District Court for the District of Colombia found that "one conclusory sentence" in an affidavit did not establish any "persuasive evidence" that confidential information was disclosed

8

to the expert-in-question. 139 F.R.D. 1, 4 (D.D.C. 1991); *see also Koch Ref. Co.*, c at 1181 (citing *Mayer*, 139 F.R.D. at 3).

Here, Samsung's evidence amounts to little more than vague assertions, not specific and unambiguous fact-based examples. Specifically, the Lynch Declaration concludes that Dr. Shoemake "participated in many privileged discussions with Samsung's attorneys" without disclosing any particulars. (Dkt. No. 45-7 ¶ 7.) Further, the cited paragraph relied on by Samsung from Dr. Shoemake's report does not cure Samsung's lack of specificity. The report establishes, at best, that Dr. Shoemake contributed only to the technical aspects of the ITC Matter. (Dkt. No. 45-10 ¶ 7 ("I have also been involved in the development of the ***technical defenses*** in this case since last spring") (emphasis added).) In light of Dr. Shoemake's billing records and his declaration, Samsung has not met its burden of showing that it disclosed confidential information in the form of litigation strategy to Dr. Shoemake.

Also, even if Dr. Shoemake had discussed confidential litigation strategy with Samsung, the Court is not persuaded that such discussions are relevant to this case. The Court notes that the amount of time that has passed between Dr. Shoemake's retainment in this case and the ITC Matter is much greater than that of experts which this Court has disqualified. *See Asus Tech. Licensing Inc. v. AT&T Corp.*, 2:23-cv-00486-JRG-RSP, 2024 WL 4026671 (E.D. Tex. Sep. 3, 2024); *Nike, Inc. v. Adidas America Inc.*, No. 9:06-cv-43, 2006 WL 5111106 (E.D. Tex. Sep. 29, 2006). Specifically, Dr. Shoemake's retainment by Samsung occurred several years ago, whereas the expert in *Asus Tech*. switched sides within months and the expert in *Nike* was retained by both parties simultaneously. 2024 WL 4026671 at *1 ("Some seven weeks prior to the filing of this action, the experts terminated their engagement with plaintiffs and later began an engagement with defendants several months after the filing of the complaint"); 2006 WL 5111106 at *1 ("Dr.

9

Cavanagh … is **currently retained** as a testifying expert in the matter of *Aveka LLC v. adidas America, Inc.* … which is on appeal") (emphasis added). Such a temporal gap in retainment strongly suggests that any information gleaned by Dr. Shoemake during the ITC Matter is not relevant to the instant case, especially in the context of rapidly evolving technologies.

Accordingly, the Court finds that any litigation strategy discussions are insufficiently relevant to disqualify Dr. Shoemake.

### *(c) Whether public policy favors disqualification?*

The Court finds it unnecessary to address any public policy considerations because Samsung failed to satisfy the *Koch* test.

## IV.   CONCLUSION

Based on the foregoing, Samsung did not meet its burden of showing that this is a "rare" case warranting disqualification. *Koch Ref. Co.*, 85 F.3d at 1181. Accordingly, the Court finds that the Motion (Dkt. No. 45) should be and hereby is **DENIED**.

Additionally, and in light of the above, the Unopposed Motion for Hearing Pursuant to L.R. CV-7(g) (Dkt. No. 57) and the Motion for Leave to Supplement the Record on Samsung's Motion to Disqualify Dr. Matthew Shoemake (Dkt. No. 67) should be and hereby are **DENIED AS MOOT**.

**So ORDERED and SIGNED this 11th day of June, 2025.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE